Richard C. TREXLER, Appellant,

v.

EL PASO TIMES, INC., a corporation, Appellee.

No. 6007.

Court of Civil Appeals of Texas.

El Paso.

March 19, 1969.

Rehearing Denied April 16, 1969.

884

J. B. Ochoa, Jr., El Paso, Warren Burnett, Richard J. Clarkson, Odessa, for appellant.

Scott, Hulse, Marshall & Feuille, George W. Finger, Richard Munzinger, El Paso, for appellee.

## OPINION

FRASER, Chief Justice.

This is a suit for libel filed by Richard C. Trexler, a former member of the faculty of the University of Texas at El Paso, against an El Paso newspaper known as the El Paso Times. The said newspaper has a section in its publication called, "Speaking the Public Mind", which are letters to the editor column, or what is more commonly known as open letters written to and published by the newspaper. This particular suit is based on a letter written by one Cris Louke, while plaintiff was a faculty member of said University, pertaining to plaintiff-appellant's actions and public statements, and intimating that said plaintiff was guilty of the crime of treason. On the trial of the case the jury found that the letter did convey to the ordinary reader that the plaintiff was guilty of the crime of treason. The jury further found that the publication was libelous but had not been actuated by actual malice, nor had the plaintiff suffered damages of any sort. In effect, the jury found the article libelous, but did not award plaintiff any damages.

Appellant's first point complains of the court having allowed the following question to be asked and answered during the cross examination of the witness Dr. Vincent Ravel, M.D. Such question and answer are as follows:

"Q Are you familiar with the position taken by the Texas Civil Liberties Union in asking the University of Texas regents to rescind new rules which would penalize faculty or students for demonstrating or using, selling or possessing drugs such as L.S.D. or marijuana?

"A No, I'm not."

Appellant maintains that the question was artfully designed to suggest that Dr. Ravel and Dr. Richard C. Trexler (both being

members of said organization) believe that the students of the University of Texas should have complete freedom to use LSD or marijuana, without ever saying so. Appellee calls our attention to the fact that the article itself was not introduced into evidence, and the only evidence of the witness was the above-quoted inquiry, and that appellant's objections were made outside the presence of the jury. Appellee also asserts that at no time did appellant object to the article on any ground of materiality or relevancy, nor did appellant specify the manner in which the question would be "prejudicial" to plaintiff. Our opinion is that while the question itself if probably improper and constituted error in being asked, we do feel the error was not sufficient or inflammatory enough to be reasonably calculated to cause the rendition of an improper judgment. As will be noted, the question was answered shortly and abruptly, "No, I'm not." We think this matter is covered in the case of Pittman v. Baladez, 158 Tex. 372, 312 S.W.2d 210 (S. Ct.1958). The court there stated as follows:

" * * * There must be some logical connection, either directly or by inference, between the fact offered and the fact to be proved, to make the former circumstance relevant to the latter. 17 Tex.Jur., Sec. 105, p. 337.

"This brings us to a consideration of the question of whether the improper evidence probably influenced the verdict unfavorably to petitioner. This question is to be determined as a matter of our judgment in the light of the record as a whole. Pittman, in order to discharge his burden of establishing the inadmissible evidence was prejudicial, was not required to prove or demonstrate that but for the erroneous action of the trial court in admitting the testimony, a different judgment would necessarily have resulted. See Texas Power & Light Co. v. Hering, 148 Tex. 350, 224 S.W.2d 191, 192; Southwestern Greyhound Lines v. Dickson, 149 Tex. 599, 236 S.W.2d 115.

It was only necessary that he establish that the evidence was reasonably calculated to and probably did cause the rendition of an improper judgment. See American General Ins. Co. v. Jones, 152 Tex. 99, 255 S.W.2d 502; Missouri-Kansas-Texas Railroad Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931, 944; Rules 434 and 503, Texas Rules of Civil Procedure."

For the reasons above set forth, appellant's Point 1 is overruled.

Appellant's Point 2 alleges that the trial court erred in submitting Issue or Question No. 2, which asked if defendant was activated by actual malice in publishing Cris Louke's letter.

Question or Issue No. 2 is as follows:

"From a preponderance of the evidence, do you find that the publication by the El Paso Times of the Cris Louke's letter (Plaintiff's Exhibit 1) was actuated by actual malice? Answer 'Yes' or 'No'.

"In connection with this question I instruct you as follows: 'Actual malice', as that term is used in this question, means done with a desire or intent to injure a person through a deliberate falsehood or with actual knowledge of its probable falsity.

"We answer No"

We think appellant's objection to the submission of this issue is proper, as, in our opinion, it places a greater burden on the plaintiff than is required by the law. This we feel to be true because it includes a definition of "actual malice" which we think is not a correct definition under the facts and circumstances of this lawsuit, as the definition requires the jury to determine whether the act done, to-wit, the publication of the Louke letter, was done with a desire or intent to injure a person through a deliberate falsehood or with actual knowledge of its probable falsity. Viewing the record as a whole, the

wording of the issue and the jury's answer to us clearly indicate that they felt that while the letter was libelous, nevertheless defendant was not entitled to any damages; and as has been said in cases in the United States Supreme Court, the jury "probably thought" it had to explore whether or not defendant deliberately intended to harm or injure the plaintiff. The jury was not asked to determine whether or not the letter was published with knowledge that it was false, or with such a reckless disregard of whether or not the same was false as to indicate a conscious indifference to the rights of the person or persons affected by it. For these reasons we believe that appellant's Point No. 2 should be, and is, sustained.

Appellant's third point charges that the trial court erred in its definition of "malice" and thus placed a much greater burden on the plaintiff-appellant than the law requires. We think this point must be sustained for the following reasons.

The definition given by the court is as follows:

"In connection with this question, I instruct you as follows: 'Actual malice', as that term is used in this question, means done with a desire or intent to injure a person through a deliberate falsehood or with actual knowledge of its probable falsity."

We believe that such definition not only placed an improper burden on plaintiff to prove that the defendant was actuated with a desire or intent to injure when it permitted the offending letter to be published, but it also caused the jury, by following such instruction or definition, to be misled into consideration of whether defendant bore ill-will or had a desire to harm the plaintiff, and forced the jury to determine if defendant had a specific desire or intent to injure plaintiff. The record shows no such desire or intent on the part of the defendant. We must consider this definition within the climate of the events and circumstances which surrounded the contro-

versy. There had been a request, first refused and then granted by the City Council, for certain people to demonstrate in the downtown area of El Paso. There was also a controversy going on as to whether or not the University of Texas should rescind its orders regarding the use of drugs and marijuana by students or members of the faculty, and of course the war in Vietnam was a matter in hot dispute. The record shows, by voluminous exhibits, that the defendant had made every effort to give both sides full coverage and proper expression of their views. As a matter of fact the defendant, according to the record, was one of those urging that the persons involved be allowed to carry out the demonstration. The demonstration was carried out, and Dr. Trexler was one of the marchers and was shown in many of the exhibits, along with others, carrying signs, mostly against the war and its conduct in Vietnam. We have searched the record and have not found any evidence of ill-will, animosity or desire to hurt the plaintiff on the part of the defendant. These facts emphasize the fallacy in the definition, because nowhere in the record do we find any evidence, testimony or excuse for requiring the jury to investigate and determine whether the letter was permitted to be published with a desire or intent to injure a person through a deliberate falsehood or with actual knowledge of its probable falsity.

"Actual malice" has been defined many times by the United States Supreme Court, beginning with the case of New York Times Co. v. Sullivan, 376 U.S. 254, 84 S. Ct. 710, 11 L.Ed.2d 686, followed by Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094, and St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262. The New York Times case points out that the consideration of the evidence against the Times supports, at most, a finding of negligence in failing to discover the mis-statements, and is constitutionally insufficient to show the recklessness that is required for a finding of actual malice. In the *Butts* case the

court points out that the jury was instructed, in considering punitive damages, to assess the reliability, the nature of the sources of the defendant's information, its acceptance or rejection of the sources, and its care in checking upon assertions. The same case also points out that the uncertainty in this area of libel actions requires further exploration and clarification of the relationship between libel law and the freedom of speech and press, lest the New York Times rule become a talisman giving the press constitutionally adequate protection only in a limited field, or what would be equally unfortunate, one which goes far to immunize the press from having to make just reparation for the infliction of needless injury upon honor and reputation through false publication. There are many other cases dealing with this matter, but we will not burden the record by further citations. For these reasons we believe and hold that the definition placed an improper and onerous burden on the plaintiff, in that it required plaintiff to convince the jury that if they found actual malice on the part of the defendant, they would have to find that the letter was published, as stated above, by the defendant with a desire and intent to injure a person through a deliberate falsehood or with actual knowledge of its probable falsity. The jury answered "No" to the question and, in all likelihood, did so because of the faulty definition of "actual malice". We do not know what the answer would have been had a correct definition of "actual malice", under the facts and circumstances here present, been submitted. For these reasons appellant's third point is sustained.

■ Appellant asserts, in his Point 4, that an award of "no damages" in the trial court does not prohibit this court from remanding this cause to the lower court for the purpose of a new trial. With this statement we agree, and necessarily overrule appellee's arguments to the contrary. Texas & Pacific Railway Co. v. Van Zandt, 159 Tex. 178, 317 S.W.2d 528. We are not saying that the jury would have awarded Dr. Trexler any damages. What we are saying is that the jury was asked to make its determination by the wrong legal standard and, for that reason, in our opinion the case should be reversed and remanded for trial by proper standards.

Reversed and remanded.