**EL PASO TIMES, INC., Petitioner,**

v.

**Richard C. TREXLER, Respondent.**

**No. B-1532.**

Supreme Court of Texas.

Nov. 12, 1969.

Rehearing Denied Dec. 10, 1969.

Scott, Hulse, Marshall & Feuille, Schuyler B. Marshall, George W. Finger and Richard Munzinger, El Paso, for petitioner.

Warren Burnett and Richard J. Clarkson, Odessa, Jesus B. Ochoa, Jr., El Paso, for respondent.

HAMILTON, Justice.

Plaintiff-respondent Richard C. Trexler brought this libel suit against defendant-petitioner El Paso Times, Inc. The trial court found that as a matter of law plaintiff was a "public figure". In accordance with the jury findings of no actual malice and no damages, the trial court rendered a take nothing judgment against plaintiff. The Court of Civil Appeals found that the definition of "actual malice" given in the trial court's charge to the jury was incorrect and therefore, the trial court's judgment was reversed and the cause remanded for a new trial. 439 S.W.2d 883. We reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

Plaintiff was a professor at The University of Texas at El Paso, during which time he led an anti-Vietnam war demonstration which aroused a considerable amount of interest and comment in the City of El Paso. Defendant, an El Paso newspaper company, published many articles, both pro and con, regarding plaintiff and his views. Defendant, in several editorials, stated that although it did not agree with plaintiff's views, it did uphold and agree with plaintiff's right to express those views, including the right to stage a peaceful anti-war demonstration. Besides these editorials and daily news reports, defendant published letters which it received from local citizens. These letters, both pro and con regarding plaintiff's activities, were published in a "letters to the editor" type column entitled "Speaking the Public Mind". This libel suit resulted from defendant's publication of one of these "letters to the editor" which was signed by Cris Loukes and sent to defendant for publication. This letter allegedly accused plaintiff of treason:

"Speaking the Public Mind

"READS REMARKS,

"REACHES CONCLUSION

"Editor, El Paso Times:

"After reading Dr. Trexler's remarks on the welfare state's being the ideal situation, I've come to an EXTREME conclusion. Throw the bum out! There was a time when rats paid the penalty for treason against our Republic. Today they teach history in high schools and colleges, or are seated in the United States Senate.

"Being opposed to the death penalty, even for these people as an alternative, it would be my pleasure to start a 'pass the hat' campaign to get Dr. Trexler and others like him the needed funds for a one-way ticket to one of his ideal welfare states. With the presentation of such a ticket, a man like Trexler would reverse his position quickly enough. I've seen this identical situation once before.

"Cutting off the leaves of a weed doesn't destroy the roots. A man in his position—to twist young, searching minds—must be removed from the classroom, else the roots will, with time, reach out and strangle the hope of our future: the youths in our schools today.

"— Cris Loukes,
"6158 Aztec Road."

The trial court submitted the following issue and instruction to the jury:

"QUESTION NO. 2

"From a preponderance of the evidence, do you find that the publication by the El Paso Times of the Cris Loukes' Letter (Plaintiff's Exhibit 1) was actuated by actual malice? Answer 'yes' or 'no'.

"In connection with this question, I instruct you as follows: 'actual malice', as

that term is used in this question, *means done with a desire or intent to injure a person through a deliberate falsehood or with actual knowledge of its probable falsity.*" [Emphasis Added.]

The jury answered "no". The Court of Civil Appeals held that the trial court's definition of "actual malice" was incorrect because it placed a greater burden on plaintiff than is required by law.

Plaintiff argues that even if the trial court's definition of actual malice substantially complies with the definition requirement expressed in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L. Ed.2d 686, 95 A.L.R.2d 1412 (1964), the trial court's definition is nevertheless incorrect because the *New York Times* case applies only to "public officials" and since the trial court determined that as a matter of law plaintiff was a "public figure", then the *New York Times* case is inapplicable to plaintiff. Plaintiff argues that where "public figures" are involved the definition of actual malice is governed by Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), rather than by the *New York Times* case. Plaintiff relies upon the following statement expressed in the *Butts* case:

> "We consider and would hold that a 'public figure' who is not a public official may also recover damages for a defamatory falsehood * * * on a showing of highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers."

█ We construe the *New York Times* case to apply to "public figures" the same as it applies to "public officials". In the *Butts* case, the U. S. Supreme Court could not agree upon an opinion. Justice Harlan, joined by Justices Clark, Stewart and Fortas, delivered the opinion relied upon by plaintiff, that is, that the *New York Times* definition of actual malice is not applicable to "public figures". However, a majority of the Court, through the opinions of Chief Justice Warren, Justice Black joined by Justice Douglas, and Justice Brennan joined by Justice White, agreed that the "* * * differentiation between 'public figures' and 'public officials' and adoption of separate standards of proof for each have no basis in law, logic, or First Amendment policy." These five Justices agreed that the *New York Times* standard of actual malice applicable to "public officials" was equally applicable to "public figures". See Annotation, 20 A.L. R.3d 1002.

Having determined that the *New York Times* case is applicable to plaintiff, we are next faced with the question of whether the trial court's definition substantially complied with the *New York Times* definition, which is, "with knowledge that it was false or with reckless disregard of whether it was false or not." Research reveals that the status of the law on this question is somewhat unsettled. We do not deem it necessary in the disposition of this case to determine the answer to this question. Rather, we will assume that the trial court's definition was incorrect and that the *New York Times* definition should have been given verbatim. Therefore, the next question that arises is whether or not there was any evidence that would support a jury finding of actual malice under the *New York Times* definition.

The Court of Civil Appeals stated that it could find no evidence that would support a jury finding of actual malice as defined by the trial court. We agree. However, we disagree with the Court of Civil Appeals' statement that it does not know what the jury's answer would have been under a proper definition of actual malice. After reviewing the record, we hold that as a matter of law there was no evidence that would support a jury finding of actual malice as defined in the *New York Times* case.

The evidence reveals that when Loukes' letter was published by defendant, plaintiff had been the subject of the news me-

dia for some time. Several El Paso organizations, including the Jaycees, American Legion, League of United Latin American Citizens and Civitan Club, passed resolutions concerning plaintiff and the anti-war demonstration. The El Paso City Council denied the anti-war demonstrators' petition for permission to hold their demonstration in San Jacinto Plaza. During the demonstration led by plaintiff, hundreds of spectators and several counter-demonstrators were present. The El Paso Herald-Post article describing the demonstration stated that the demonstrators were booed and jeered and called "comrade" and "red". In light of this situation, defendant continually published editorials upholding the right of plaintiff and the other demonstrators to express their views and to participate in the demonstration. Some of the news articles and "letters to the editor" published by defendant were complimentary to plaintiff and some were derogatory.

The only evidence relied upon by plaintiff to show actual malice is the testimony concerning defendant's employee William I. Latham. The evidence reveals that Latham had the responsibility of reading all "letters to the editor". Latham would then select and approve the letters to be published in the "Speaking the Public Mind" column. Latham read each "letter to the editor" for the purpose of determining if it was fit or suitable to be published. Latham testified that he would not publish a letter if, in his opinion, it libeled a person. Latham read Loukes' letter at least one or two days before it was published. Latham had no information which would lead him to believe plaintiff was guilty of treason. Neither Latham nor any other employee of defendant made any investigation to determine the truth or falsity of Loukes' letter. Defendant did not normally investigate "letters to the editor" which expressed the opinion of the author of the letter. Latham testified that he would not have published Loukes' letter if he thought it accused plaintiff of treason because such an accusation would be dangerous and harm-

ful. Latham stated that when he approved Loukes' letter for publication, he considered it as expressing an "EXTREME conclusion" and opinion of Loukes and not a statement of fact and not a statement of policy on the part of defendant.

█  We think, as a matter of law, that the evidence does not show actual malice as defined in the *New York Times* case. Failure to investigate the truth or falsity of a statement before it is published has been held insufficient to show actual malice. Negligence or failure to act as a reasonably prudent man is likewise insufficient. New York Times Co. v. Sullivan, *supra*, and St. Amant v. Thompson, 390 U. S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). Also see Associated Press v. Walker, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). In the *New York Times* case, the Court held that defendant's belief that the publication was substantially correct was a reasonable belief and therefore could not constitute actual malice even if the publication were not substantially correct. In the *St. Amant* case, the Court stated:

> "St. Amant's mistake about his probable legal liability does not evidence a doubtful mind on his part. That he failed to realize the import of what he broadcast—and was thus 'heedless' of the consequences for Thompson—is similarly colorless."

The Court conceded that the *New York Times* definition of actual malice "\* \* \* puts a premium on ignorance, encourages the irresponsible publisher not to inquire, and permits the issue to be determined by the defendant's testimony that he published the statement in good faith and unaware of its probable falsity." The Court concluded, however, that a standard which is more strict would result in self-censorship and would be contrary to the purpose of the First Amendment. In light of these U. S. Supreme Court opinions, we hold that the publication was not libelous because there is no evidence that defendant pub-

lished Loukes' letter "with knowledge that it was false or with reckless disregard of whether it was false or not."

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.