Harry **BREEN** and the National Association of Government Employees, Appellants,

v.

Ronald G. **DeLORD,** Appellee.

No. 14654.

Court of Appeals of Texas, Austin.

Oct. 22, 1986.

Rehearing Denied Feb. 11, 1987.

R. James George, Jr., Graves, Dougherty, Hearon & Moody, Austin, for appellants.

Bruce A. Pauley, Lyon & Lyon, Mesquite, for appellee.

Before SHANNON, C.J., and SMITH * and GAMMAGE, JJ.

SHANNON, Chief Justice.

This appeal originated as a suit filed by appellants Harry Breen and National Association of Government Employees (National Association) against appellee Ronald G. DeLord and Combined Law Enforcement Association of Texas, Inc. (State Association, sometimes known as "CLEAT") in the district court of Travis County. DeLord and the State Association filed a counterclaim asserting that appellants had libeled them. After a jury trial, the district court rendered judgment for DeLord against appellants for $175,000 in actual damages resulting from the libel and $750,000 in punitive damages. This Court will reverse the judgment.

The parties' dispute arose from an unsuccessful attempt by the National Association

* Before Earl W. Smith, Justice (retired), Third Court of Appeals, sitting by assignment. *See*

and the State Association to affiliate and conduct joint operations. Breen is the executive secretary of the National Association and DeLord was the president of the State Association. Both associations are labor organizations and before 1981 each competed with the other for membership of Texas law enforcement officers. After a period of negotiation, the two associations agreed in July 1981 to operate as a single labor organization. Under the new arrangement, DeLord became an employee of the National Association with the responsibility of running the Texas operation.

After about a year of joint operation, disagreements arose. Believing that DeLord was encouraging the State Association to secede from the National Association and not having received a large sum of dues from the State Association for a period of time, the leadership of the National Association determined to fire DeLord. The National Association then sent Breen to Austin to take over the local operations and to obtain control of Association property and bank accounts.

Both associations then commenced campaigns to regain or retain the loyalties (and memberships) of Texas law enforcement officers. During his visits with local chapter presidents of the State Association, Breen told them his version of what had happened and stated that DeLord "had gone South with the money." (DeLord did not plead slander based upon this oral statement.)

DeLord counterattacked, in part, by a letter sent to all members of the State Association which included the following paragraph:

ABSOLUTELY NO FUNDS ARE UNACCOUNTED FOR FROM [the State Association] ACCOUNTS. ALL STORIES FROM [the National Association] ARE FALSE, MISLEADING AND DAMAGING TO MYSELF AND [the State Association]. PLEASE ATTEND THE BOARD MEETING & LET'S KICK

Tex.Gov't Code § 73.012 (Supp.1986).

THESE SNOWBIRDS OUT OF TEXAS. ANY IBPO[1] LOCAL ATTENDING THIS MEETING SHOULD PROBABLY TRANSFER ALL FUNDS TO A BANK ACCOUNT THAT CANNOT BE SEIZED. WE WILL CHARTER ALL IBPO LOCALS JOINING WITH US. BARGAINING LOCALS MUST HOLD LEGAL DECERTIFICATION ELEC- TIONS. (Emphasis in the original.)

On April 18, 1983, Breen sent a letter to all members of the State Association giving his explanation for what had happened. The parts of this letter which formed the basis for the libel counterclaim are as follows:

\*     \*     \*     \*     \*     \*

2. The National President was unable to reach DeLord by telephone and was advised by reliable IBPO Local Presidents that DeLord was soliciting IBPO Locals to join him in leaving the IBPO Union. 3. Based on these facts, the National President determined that the duties of his office impelled him to place the affairs of [State Association] in trusteeship in accordance with the Constitution and By-Laws of the National Union and to suspend DeLord from all offices and positions he held with [The State Association] pending a hearing.

\*     \*     \*     \*     \*     \*

5. Our duty is to RETURN the [State Association] to the members as soon as possible. This will be done by a Democratic election so that the members can elect whomever they wish!

\*     \*     \*     \*     \*     \*

14. I wish to emphasize that [the State Association] continues to function as a viable bargaining agent and will continue to do so regardless of the shenanigans of DeLord and his attorneys. 15. In considering your decision, it would seem logical to review the financial abilities and strengths of the [State Association] as part of the National Un-

ion compared to the unknown capabilities and financial resources of DeLord.

\*     \*     \*     \*     \*     \*

17. From the date of affiliation, the [National Association] has received $146,-192.00 in membership dues from [the State Association]. During the same period, the National Union spent the following monies in connection with the Austin Office:

| | |
|---|---|
| 1981 Salaries and Attorneys | $139,500.38 |
| 1982 Salaries and Attorneys | 125,731.00 |
| 1981 Consultants | 6,881.75 |
| 1982 Consultants | 1,500.00 |
| Inventory Materials | 10,139.14 |
| Rent through February | 23,206.00 |
| 1981 Security Deposit | 2,994.00 |
| 1981–82 Vendors and Attorneys | 197,046.04 |
| 1981 Employee Expenses | 52,694.91 |
| 1982 Employee Expenses | 71,629.36 |
| 1983 Employee Expenses | 11,122.33 |
| TOTAL | $642,394.91 |

All told, the [National Association] spent more than $600,000.00 on the Austin Office from the date of the affiliation through December 31, 1982. In spite of this fact, DeLord is telling everyone that [the State Association] does not exist! 18. With the recent affiliation of IBPO with AFL/CIO, the interests of [State Association] are represented by the most powerful labor lobbying group in Austin. You may be assured that IBPO will use this experienced Texas Legislative Team for the benefit of the membership. 19. It appears there is over $300,000.00 missing. We intend to find out why and we also [sic] to prosecute any official or officials regarding the shortage. 20. The FACTS indicate that the [National Association] has lived up to every one of its commitments to you. We intend to stay in Texas and to continue to represent you to the best of our ability.

1. The International Brotherhood of Police Officers (IBPO) is a division of the National Association.

As we understand, paragraph nineteen forms the basis for DeLord's libel claim. DeLord claims that by that paragraph, Breen accused him of stealing more than $300,000.

The district court submitted the parties' claim for libel by special issue number two which inquired if Breen's letter of April 18, 1983, libeled DeLord "and/or" the State Association. The jury answered that the letter was a libel of DeLord, but failed to find that it was a libel of the State Association.

Special issue number two was accompanied by an instruction which is not here complained of. The district court's instruction is as follows:

A libel consists of words expressed in printing or writing, which are false, tending to injure a person's reputation and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach his honesty, integrity, virtue, or reputation.

The claim of Mr. DeLord and [the State Association] consists of six essential elements, as follows:

First, that written statements as opposed to oral statements were published;

Second, that the written statements constituted libel as the term is defined for you in these instructions;

Third, that the publication was "of and concerning," Mr. DeLord or [the State Association] or both;

Fourth, that the publication was communicated to third persons;

Fifth, that the publication was false in some material particular; and

Sixth, that the written statements were published with actual malice, as that term is explained in these instructions.

The burden is on Mr. DeLord and [the State Association] to prove the first five of these elements by a preponderance of the evidence.

The burden is stricter with regard to the sixth element—the element of actual malice. Mr. DeLord and [the State Association] have the burden of establishing by clear and convincing evidence that the publication was made with actual malice.

\* \* \* \* \* \*

A publication is made with "actual malice," as that term is used in this charge, if it is made with knowledge that it is false, or with reckless disregard of whether it is false or not.

"Reckless" implies a higher degree of culpability than negligence. A failure to exercise ordinary or reasonable care in ascertaining the truth of published material does not, standing alone, render a publisher liable in damages.

In order to establish recklessness, Mr. DeLord and [the State Association] must prove that the publisher had a high degree of awareness of the probable falsity of the statements published.

A statement is "of and concerning a person" if it was intended to refer to that person and that it is reasonably probable that members of the public who read the statement would understand it as referring to him. Under the law a corporation is considered to be a person.

By charging on "actual malice" the district court concluded, correctly, that DeLord was, in effect, a "public figure" in an on-going dispute involving two competing labor organizations. *Letter Carriers v. Austin*, 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974).

By answering that the April 18 letter libeled DeLord, the jury necessarily found, under the court's instructions, that the evidence was clear and convincing that Breen acted with actual malice in circulating the letter.

Appellants attack the judgment asserting, among other things, that DeLord failed to establish several elements of a libel cause of action. Although several reasons may exist for reversal of the judgment, this Court has determined that there is no evidence to support the jury's finding that when Breen circulated the April 18 letter he acted with "actual malice." More specifically, there is no evidence that when Breen circulated the letter he actually knew that the complained of statements

were false or that he had substantial doubts about the truth of those statements and despite those doubts circulated the letter.

For a public official or public figure to recover in a defamation suit, he must prove "that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan,* 376 U.S. 254, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1964). "Reckless disregard" requires proof that a false defamatory statement was made with a "high degree of awareness of [its] probable falsity." *Garrison v. Louisiana,* 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). There must be sufficient evidence to conclude that the defendant in fact entertained "serious doubts" as to the truth of the publication. *St. Amant v. Thompson,* 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968).

■ The opinions of the courts in this state emphasize that it is the injured party's burden to demonstrate the state of mind of the author at the time the statement was written. Reckless statements are those made with a *high degree of awareness* of probable falsity at the time written. *Foster v. Upchurch,* 624 S.W.2d 564 (Tex.1981). Failure to investigate the truth of a statement before it is published is insufficient to show actual malice. *El Paso Times v. Trexler,* 447 S.W.2d 403 (Tex.1969).

On direct examination, Breen testified that he composed the letter of April 18 upon the best information available to him. At the time he wrote the letter he considered it to be honest and fair. On cross-examination, Breen responded that he believed that everything in the April 18 letter was true.

Breen consulted the National Association's Boston office to obtain the information from which he deduced that there was over $300,000 due the National Association from the State Association. An audit commenced after the April 18 letter, and completed several months later, however, showed there was no money missing. The fact that Breen failed to sufficiently investigate the facts concerning the dues before writing the April 18 letter and the fact that he was ultimately shown to be mistaken is not sufficient to establish actual malice. *El Paso Times v. Trexler, supra.*

DeLord suggests that Breen's ill will toward him was some evidence of Breen's actual malice. Breen's hostility toward him, DeLord claims, was evidenced by Breen's comment to some law enforcement officers that DeLord had "gone South" with the missing money. Whether or not Breen's comment evidenced ill will toward DeLord, it plainly does not prove that when Breen wrote the April 18 letter he knew it was false or had a high degree of awareness of its probable falsity. *Greenbelt Cooperative Publishing Ass'n. v. Bresler,* 398 U.S. 6, 10, 90 S.Ct. 1537, 1539, 26 L.Ed.2d 6 (1970). Breen's comment may demonstrate that he was consistent in his belief that DeLord took the money, but that fact does not bear on whether or not Breen *knew* the statement was false.

DeLord points out that the jury was free to disbelieve and disregard Breen's testimony concerning the contents of the April 18 letter. No one disputes that premise. The jury's refusal to believe Breen's testimony, however, does not somehow create affirmative evidence that Breen knew that the letter was false. *Bose Corp. v. Consumers Union,* 466 U.S. 485, 512, 104 S.Ct. 1949, 1966, 80 L.Ed.2d 502 (1984).

When the facts are viewed in light of the holdings of the Supreme Court of Texas and of the Supreme Court of the United States, the conclusion is inescapable that there is no evidence that Breen wrote the letter of April 18 with reckless disregard for its truthfulness. To the contrary, appellants presented evidence that Breen thought the matters asserted in the letter were true and that he made some investigation before writing the letter. There is not clear and convincing evidence to support a finding of actual malice. *Doubleday & Co., Inc. v. Rogers,* 674 S.W.2d 751 (Tex. 1984).

■ The State Association attempts to assert error in the judgment by four

"crosspoints." A summary of the procedural posture of the appeal is necessary to understand the State Association's position.

Appellants National Association and Breen perfected a limited appeal from that part of the judgment awarding $925,000 to *one party*, DeLord. In defense of the judgment, DeLord, as appellee, filed a brief asserting reply points. DeLord did not complain of the judgment by cross-points. Although *not* an appellee in the present appeal, the State Association attempts to complain of the judgment by "cross points" asserted in the brief filed by DeLord.

The State Association chose not to perfect an appeal even though the judgment was unfavorable to it in most respects. Had the State Association desired to complain of the district court's judgment, it should have perfected an appeal. Because the State Association did not perfect an appeal, the judgment as to it has long been final and this Court has no jurisdiction to consider the State Association's attempted attack on the judgment.

The judgment awarding $925,000 to DeLord is reversed and judgment is rendered that DeLord take nothing.

GAMMAGE, J., not participating.