**Philip M. ROSS, Appellant,**

v.

**Weir LABATT, III, Appellee.**

No. 04–94–00008–CV.

Court of Appeals of Texas,
San Antonio.

Nov. 30, 1994.

Rehearing Denied Feb. 10, 1995.

Philip M. Ross, Scott T. Staha, Vada L. Seward, San Antonio, for appellant.

Bernard Campion, Campion & Campion, San Antonio, for appellee.

Before PEEPLES, LOPEZ and STONE, JJ.

## OPINION

STONE, Justice.

This is an appeal from the grant of a general summary judgment against a public figure dismissing his entire cause of action in his defamation suit. We affirm.

Weir Labatt was a San Antonio city councilman when he called a news conference at City Hall on March 27, 1991 to discuss the credentials of three candidates for the city council and their involvement in the Applewhite reservoir controversy. One of the people he discussed during the conference was Philip Ross, a staunch opponent of the reservoir, and a candidate for the District 4 place on the city council. A candidate for city council is required to live in the district for which he is running. While referring to Ross, Labatt alleged that Ross did not live in District 4, but rather rented his house there to others. Labatt further claimed that Ross lied about his place of residence, and that he lived on Jett Road, which is a part of the proposed Applewhite site. Labatt also stated that Ross owed the federal government $40,000 in legal fees. Labatt refused to apologize or retract these statements, even after Ross provided him with proof that his statements were wrong. Consequently, Ross brought this suit seeking actual and punitive damages for defamation.

Labatt moved for summary judgment contending that Ross could not prove that Labatt had made the statements with "actual malice" as required by both state and federal law. The trial court granted Labatt's motion

and entered a summary judgment dismissing the suit. Because Ross is suing Labatt for defamation, this case raises questions under both the Texas and United States Constitutions concerning freedom of speech.

Freedom of speech in this country is derived from a "background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686, 701 (1964).

Texas has long been committed to free speech. Indeed, the determination of Texans to have the freedom of speech was one of the contributing factors which led to the Texas revolution for independence from Mexico.[1] Throughout all of the versions of the Texas Constitution, the framers consistently rejected language similar to the United States Constitution, which is written only as a restriction on the government. Instead, Texans decided on a version which granted to the people an affirmative right to free speech. This "inclusion of [an] expansive freedom of expression clause and rejection of more narrow protections indicates a desire in Texas to ensure broad liberty of speech." *Davenport v. Garcia*, 834 S.W.2d 4, 8 (Tex. 1992); *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex.1989); *O'Quinn v. State Bar of Texas*, 763 S.W.2d 397, 402 (Tex.1988).

The final version of article I, section 8, of the Texas Constitution provides in relevant part:

Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be

1. For a comprehensive discussion on the freedom of speech in Texas and its origins, see Justice Doggett's majority opinion in *Davenport v. Garcia*, 834 S.W.2d 4, 7–11 (Tex.1992) and the daily reports of the Galveston Daily News which kept a close journal of everything said, and all versions of the laws proposed, at the numerous constitutional conventions of Texas, especially the 1875 convention. These newspaper reports and the books cited below are available at the Lyndon Baines Johnson Library at the University

of Texas in Austin. *See*, ROBERT A. CALVERT AND ARNOLDO DE LEON, THE HISTORY OF TEXAS, 56–58 (1990); JOURNAL OF THE CONSTITUTIONAL CONVENTION, 62 (1875); JOHN SAYLES, INTRODUCTION TO THE TEXAS CONSTITUTION, 129–35 (4th ed. 1893); Robert E. Hall, *Remonstrance—Citizen's Weapon Against Government's Indifference*, 68 TEX.L.REV. 1409, 1412–21 (1990); Arvel Ponton III, *Sources of Liberty in the Texas Bill of Rights*, 20 ST. MARY'S L.J. 93, 100 (1988).

passed curtailing the liberty of speech or of the press.

TEX. CONST. art. I, § 8.

Because we find that Labatt's actions were protected under the Texas Constitution, we need not address federal law. *Davenport v. Garcia,* 834 S.W.2d at 11–14 ("Having found that the trial court's gag orders violate article I, section 8 of the Texas Constitution, this court need not consider whether the United States Constitution has also been violated."); *LeCroy v. Hanlon,* 713 S.W.2d 335, 338–39 (Tex.1986); *Travelers' Ins. Co. v. Marshall,* 124 Tex. 45, 76 S.W.2d 1007, 1010–11 (1934). We will, however, look to federal law for helpful guidance because we see no reason at this time for our state standard regarding defamation to differ from the federal standard, but emphasize that federal law is not the basis of our decision. *Michigan v. Long,* 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201, 1214 (1983).

■ It is uncontested that Ross is a public figure for purposes of this suit because he drew himself into the middle of a public controversy and was running for political office. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 351, 94 S.Ct. 2997, 3013, 41 L.Ed.2d 789, 812 (1974); *Casso v. Brand,* 776 S.W.2d at 554; *Einhorn v. LaChance,* 823 S.W.2d 405, 411–13 (Tex.App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.). Ross was a candidate for the city council and actively involved in the political campaign against the Applewhite reservoir at the time the statements were made.[2]

■ Because he was a public figure, it would have been Ross' duty at trial to prove by clear and convincing evidence that Labatt made a false and defamatory statement about him with actual malice. *Casso v. Brand,* 776 S.W.2d at 554. Actual malice is defined as a false statement of fact made with knowledge that the statement was false or with reckless disregard as to the truth of the statement. *Gertz v. Robert Welch, Inc.,* 418 U.S. at 349, 94 S.Ct. at 3011, 41 L.Ed.2d at 813; *New York Times Co. v. Sullivan,* 376 U.S. at 279–80, 84 S.Ct. at 726, 11 L.Ed.2d at 706; *Hagler v. Proctor & Gamble Mfg. Co.,* 38 Tex.Sup.Ct.J. 11, 11 (October 6, 1994) (per curiam); *Casso v. Brand,* 776 S.W.2d at 554. Reckless disregard "requires proof that a false defamatory statement was made with a high degree of awareness of its probable falsity." *Holly v. Cannady,* 669 S.W.2d 381, 384 (Tex.App.—Dallas 1984, no writ); *see also, Carr v. Brasher,* 776 S.W.2d 567, 571 (Tex.1989) (Plaintiff must prove Defendant had serious doubts as to the truth of his statement); *Casso v. Brand,* 776 S.W.2d at 558. "It is not enough for a fact finder to disbelieve a defendant's testimony, rather, the plaintiff must offer clear and convincing affirmative proof [of actual malice] to support a recovery." *Howell v. Hecht,* 821 S.W.2d 627, 630 (Tex.App.—Dallas 1991, writ denied) (citing *Casso v. Brand,* 776 S.W.2d at 558). This stringent standard is imposed upon plaintiffs to prevent a chilling effect on the "uninhibited, robust and wide-open" debate of public issues.

■ Labatt provided sufficient proof to support the summary judgment because he negated the essential element of actual malice. In his affidavit, Labatt stated that he had no knowledge or even suspicions that his statements about Ross were false. The fact that his statements proved to be false is immaterial. Proof of malice cannot be inferred from the falsity of a statement alone. *Marathon Oil Co. v. Salazar,* 682 S.W.2d 624, 631 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Cheatwood v. Jackson,* 460 S.W.2d 528, 530 (Tex.App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.). Negligence, failure to investigate the truth of a statement prior to publication, and failure to act as a reasonable, prudent person have also been held insufficient by themselves to establish actual malice. *El Paso Times, Inc. v. Trexlar,* 447 S.W.2d 403, 406 (Tex.1969); *Shearson Lehman Hutton, Inc. v. Tucker,* 806 S.W.2d 914, 924 (Tex.App.—Corpus Christi 1991, writ dism'd w.o.j.); *Marathon Oil Co. v. Salazar,* 682 S.W.2d at 631.

---

**2.** The Applewhite reservoir controversy was a heated political debate, resulting in two local public referendums.

Texas law permits a summary judgment to rest solely upon the affidavit of an interested party if it is "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." *Casso v. Brand,* 776 S.W.2d at 558–59; *see also* Tex.R.Civ.P. 166a(c). "Could have been readily controverted" means that the "testimony at issue is of a nature which can be effectively countered by opposing evidence." *Casso v. Brand,* 776 S.W.2d at 558.

In support of his motion for summary judgment, Labatt stated in his affidavit that he relied upon Ross' own assertions before the city council that he lived on Jett Road. Labatt also relied upon City Councilman Frank Wing who said he thought Ross resided on Jett Road and rented his property in District 4 to others. The sources of information which Labatt relied upon were identified and easily verifiable. Labatt also stated:

> Whatever comments I made at the news conference on March 27, 1991, about Philip Ross, I made in good faith believing that they were true. I was not aware that anything I said about Mr. Ross may have been false, nor did I have any reason to have doubts about the validity of any such statement, and certainly I had no serious doubts about same.

With respect to the legal fees owed, Labatt stated that he had believed in good faith that Ross owed the fees to the federal government because Ross had been involved in a federal law suit. He admitted that he had since been informed that the legal fees had been assessed by a state court, but stated that he had a good faith belief in the truth of his statements at the time they were made. Because Labatt's affidavit is clear, convincing, and readily controvertible, it was incumbent upon Ross to offer sufficient summary judgment proof to raise an issue of fact on the question of actual malice. Tex.R.Civ.P. 166a(c); *Howell v. Hecht,* 821 S.W.2d at 630. Ross did not offer any evidence as to Labatt's knowledge concerning the legal fees.

Ross presented the following evidence which he contends raises a fact question as to Labatt's knowledge of the falsity of his other statements: Ross' property on Jett Road at the Applewhite site had been condemned previously by the city council. Labatt was present and voted at this meeting. The condemnation process was then completed by June of 1990 and the house was vacated. A few weeks later the property was vandalized, after which Labatt personally visited the site. All of this occurred before Labatt made his statements. Further, Ross' address could be verified by the documents on file with his application for city council.

Ross does not provide any proof, however, that when Labatt visited the Applewhite site he made anything more than a cursory look at the property. There was no evidence that he stopped anywhere near Ross' house. Labatt testified in his deposition that he thought the property looked occupied. Labatt's vote to condemn Ross' Applewhite property also does not mean that he knew the condemnation process was later completed, nor that he knew Ross had been required to vacate the property. Ross also did not provide any proof that Labatt knew that a different address was listed on Ross' application for the city council. We cannot impose a duty to investigate all possible leads upon individuals before they make public statements. Labatt had two sources for his belief that Ross resided on Jett Road, including Ross himself.

Ross further argues that internal inconsistencies in Labatt's statements prove malice. This argument has been rejected previously by a Texas court. *Holly v. Cannady,* 669 S.W.2d at 384 (Plaintiff "simply relies upon the broadcast itself, arguing that the internal inconsistencies therein necessarily prove a reckless disregard of its truth or falsity. We disagree."). Also, we do not believe the statement is in fact contradictory because a person could have his property condemned and still live there for a time.

■ Ross also argues that Labatt acted with malice because he did not stop the newspapers and television stations from republishing his statements. Ross cites *Howell v. Hecht,* 821 S.W.2d 627 (Tex.App.—Dallas 1991, writ denied), for this contention. In *Howell,* the court ruled that the defendant's republication of a statement constituted no

evidence on the issue of actual malice because the letter Howell sent to Hecht had not sufficiently alerted Hecht of facts which proved his statements were false. *Id.* at 631. In the instant case, Ross states that he told Labatt that his statements were false, but not until after the statements had been broadcast by the media. The republication, therefore, occurred before Labatt knew the statements were false and consequently has no bearing on the issue of malice.

Ross has failed to produce evidence that Labatt entertained any serious doubts as to the truthfulness of his statements. Ross' blanket assertion in his response to the motion for summary judgment that Labatt should have known the statements were false does not qualify as competent summary judgment proof. *Mercer v. Daoran Corp.,* 676 S.W.2d 580, 583 (Tex.1984). Ross was required to offer affirmative proof that Labatt in fact knew his statements were false, or at least knew they were probably false. If we were to rule that what Labatt "should have known" is sufficient proof, we would be applying a negligence standard which has been specifically rejected for suits by public officials.

Finally, Ross argues the trial court required him to prove his case by clear and convincing evidence. The record reflects, however, that the trial court only inquired as to how Ross was going to do so at trial. This was a permissible inquiry on the court's behalf. The record does not indicate that the trial court applied the clear and convincing standard to Ross at the summary judgment hearing. The summary judgment is affirmed.