Gilbert H. King, J.
The trial of these actions against the City of Buffalo for false arrest, false imprisonment and assault and battery and against WBEN, Inc., for libel and for damages pursuant to section 51 of the Civil Rights Law resulted in verdicts of no cause of action on all of the claims against the city, a dismissal by the court of the cause of action based on the Civil Rights Law and a verdict against WBEN, Inc., for $5,000 punitive damages in the libel action.
The defendant, WBEN, Inc., moves for an order setting aside the verdict and dismissing the complaint or, in the alternative, granting a new trial.
It is the defendant’s contention, inter alia, that since the jury awarded no actual or compensatory damages, the verdict for punitive damages only may not stand.
Defendant cites as authority for its position the statement in Kiff v. Youmans (86 N. Y. 324, 331 [1881]) that exemplary damages when given 1 ‘ are superadded ’ ’ to actual damages and that “ one who by reason of his fault ” cannot have actual .damages “ must be destitute of any legal right to” exemplary *143 damages. The court is of the opinion that defendant’s reliance on the Kiff case is misplaced, first because it concerned a case of assault and battery and second because the plaintiff “by reason of his own fault ” (an unlawful intrusion on defendant’s land) precipitated the act complained of. The holding in Kiff is simply that since plaintiff provoked the assault and battery, he could not be awarded exemplary damages and that his provocation had to be applied in mitigation of actual damages. In the instant case plaintiff neither provoked, nor by his conduct, justified the defendant’s libelous publication.
The court has not found, nor has its attention been directed to, any case in this State in which it has been held that in an action for libel, actual damages must be awarded as a predicate for an award of punitive damages.
The cases in this State which hold, or seem to hold, that there can be no award of punitive damages without an award of actual damages involve cases of fraud, false imprisonment and assault, none of which are bottomed on the legal philosophy which justifies punitive damages in a libel case. That philosophy was stated in 1896 in Prince v. Brooklyn Daily Eagle (16 Misc. 186, 190) where the court said that “ A person may be of such high character that the grossest libel would damage him none; but that would be no reason for withdrawing his case from the wholesome, if not necessary, rule in respect of punitive damages.” In Reynolds v. Pegler (123 F. Supp. 36, 37-38, affd. 223 F. 2d 429, cert." den. 350 U. S. 846) the principle enunciated in Prince (supra) was restated. The court rejected defendant’s contention that the “ giving of punitive damages is dependent upon, and must bear relationship to, the allowance of actual damages ’ ’ stating that1 ‘ the applicable law is to the contrary ’ ’ and that “ It has long been the law of New York * * * that the jury may award substantial exemplary damages even though no financial injury has been suffered.” (Cf. Udell v. Josephson, 11 N. Y. S. 2d 866.) To adopt a contrary view “ would mean that a defamer gains a measure of immunity no matter how venomous or malicious his attack simply because of the excellent reputation of the defamed; it would mean that the defamer, motivated by actual malice, becomes the beneficiary of that unassailable reputation and so escapes punishment. * * * The doctrine advanced by the defendants would nullify one of the underlying objectives of punitive damages and has consistently been rejected by New York and federal authorities, although recognized in a few states. * * * Punitive or exemplary damages are intended to act as a deterrent upon the libelor so that he will not repeat the offense, and to serve as *144 a warning to others. * * * Punitive damages are allowed on the ground of public policy and not because the plaintiff has suffered any monetary damages for which he is entitled to reimbursement ; the award goes to him simply because it is assessed in his particular suit. The damages may be considered expressive of the community attitude towards one who wilfully and wantonly causes hurt or injury to another.” (Reynolds v. Pegler, 123 F. Supp., at p. 38; emphasis supplied.) In Toomey v. Farley (2 N Y 2d 71, 83) our Court of Appeals citing the quoted language of Prince and Reynolds (supra) said “To those views we subscribe ” followed by this significant statement “ The question of the amount of compensatory and or punitive damage to be awarded was a matter for the jury.” (Emphasis supplied.)
Since it is the mere performance of the libelous act and not its consequences that warrant punitive damages why should any finding of actual damages be necessary? It has been repeatedly held that an award of nominal compensatory damages will sustain substantial verdicts for punitive damages. (Cf. Reynolds v. Pegler, 123 F. Supp. 36, supra [$1. compensatory, $175,-000 punitive damages].) Is it not pure sophistry to say in one breath that punitive damages are not dependent upon and need bear no relationship to actual damages and in the next breath, require that at least nominal damages be awarded, (not necessarily found) before an award of punitive damages may stand? Is not a finding of 64 or $1 compensatory damages, in fact and in truth, a finding of no actual damages ? If such a legal fiction exists, it should be abandoned and the philosophy of Prince, Reynolds and Toomey (supra) should be taken at its plain word that punishment of the libel er not actual damage to the defamed, is the sole foundation for punitive damages. It is what is said, not what is suffered, that warrants punitive damages and a jury should not be required to find what does not exist before it may award punitive damages to an otherwise undamaged defamed person.
Just as a person who stands at the zenith of public trust and esteem, unassailable in character and position, may suffer no actual damage by a libel so may a person who is obscure, unknown and of low estate and perhaps at the nadir of his fortunes suffer no actual damage from a libel. The latter person, however, like the former, may recover punitive damages without having suffered actual damages. To hold otherwise would permit the defamer to select and defame persons of the latter type or any person unlikely to suffer actual damage by a libel, without fear of monetary punishment.
*145 In the instant ease the plaintiff was unemployed at the time of the incident, lived in a modest neighborhood and had no wide acquaintanceship in Buffalo. The jury was justified in finding that he suffered no actual damages. The award of punitive damages was warranted as a recital of the bizzare circumstances which led up to and caused the libel well indicates. On Saturday, July 1, 1961, at about 7:00 p.m., the police were notified that an armed robbery was in progress at the Hall Baking Company. At the scene of the robbery they captured two of the robbers and were advised that apparently two others were involved and had escaped. The police picked up the plaintiff in the vicinity of the crime, he gave what they considered to be an unsatisfactory explanation of his presence in the area and that coupled with the general description of the escaped robbers led the police to consider plaintiff as a“ prime suspect ” and to place him under arrest. He was taken to a precinct station in handcuffs and while in the station a cameraman employed by the defendant WBEIST, Inc., took a motion picture of the defendant while the handcuffs were being removed. At the same time three of the persons (the third having been caught after plaintiff was arrested) who had actually been involved in the robbery were in the station and their picture was also taken at the same time by the defendant’s cameraman. The arrested participants acknowledged that plaintiff had no part in the robbery. The police then released him and took him in a police car to his own neighborhood. The release of the plaintiff took place at about 8:00 or 8:30 p.m. At 11:00 p.m. the defendant WBEN, Inc., the owner and operator of a television and radio station in the City of Buffalo telecast an account of the robbery using the picture taken at the station. By the time of the telecast the fourth robber had been captured and all four had been identified by name and address. The film was accompanied by this opening statement “ Four bandits armed with shotguns who held up the Hall Baking Company were captured minutes later.” The film showed the plaintiff and the three actual participants at the precinct station. It did not show the fourth participant who was captured later. The audio portion • of the telecast included the names and addresses of the robbers but concededly did not include any reference to plaintiff by name and address. The defendant repeated the telecast and audio comment in substantially the same form at 12 noon on Sunday. The news editor for the Sunday noon telecast acknowledged that one of his methods and sources of checking for further details of Saturday’s stories was to read the Sunday newspaper. The Sunday paper con *146 tained an account of the robbery, the names of the four robbers and their pictures. No further check was made with the police or any other source nor was any explanation offered to the •viewing public of plaintiff’s presence in the motion picture or of his subsequent release. The picture considered, as it must be, with the accompanying script was not true at the time of the telecasts and, therefore, the defense of truth is not available to the defendant.
On these facts the telecast by the defendant at 11:00 p.m. on the day of the incident, 2% to 3 hours after the plaintiff’s release and again at noon the following day without an exculpating change of script or picture destroyed whatever privilege, qualified or otherwise, defendant had as a public disseminator of news. The defendant had ample opportunity both in time and sources of inquiry to correct or explain the damaging implications of the combination of the picture and accompanying audio script. As plaintiff’s, counsel acknowledged in his summation, there was no proof of actual malice on the part of the defendant but legal malice may be created by wanton and reckless conduct. On that premise there is ample support for the jury’s verdict.
Defendant further contends that the verdict is against the weight of the evidence citing in support of that contention the no cause verdicts in favor of the city. That plaintiff’s actions against the city for false arrest, false imprisonment and assault required a totally different type of proof, involved a completely different set of facts, different witnesses, different principles of law and entirely different requirements for plaintiff’s success seems too obvious to require comment. Much of the plaintiff’s direct case against the defendant, WBEN, Inc., was based on the testimony of the employees of WBEN, Inc. The court agrees, as argued by defendant, that their testimony was “ clear, convincing and completely believeable.” The difficulty from defendant’s point of view is that the very same ‘ ‘ believeable ’ ’ testimony taken collectively also indicated such wanton and reckless actions on the part of the defendant’s employees as to justify both the finding of legal malice and a verdict predicated thereon.
The defendant WBEN, Inc. ’s motion is in all respects denied.