DOUBLEDAY & COMPANY, INC. et al., Petitioners,

v.

Dr. N. Jay ROGERS, Respondent.

No. C–1793.

Supreme Court of Texas.

July 11, 1984.

Rehearing Denied Sept. 19, 1984.

Orgain, Bell & Tucker, John G. Tucker, Beaumont, Robert J. Hearon, Jr., Austin, Robert M. Callagy, New York City, Harvey Katz, Washington, D.C., for petitioners.

Mehaffy, Weber, Keith & Gonsoulin, Robert Q. Keith, Johnson City, Charles A. Wright, Austin, Carl A. Parker, Port Arthur, for respondent.

BARROW, Justice.

This is a libel suit brought by respondent, Dr. N. Jay Rogers, against petitioners, Harvey Katz and Doubleday & Co., Inc. Katz authored and Doubleday published a book entitled *Shadow on the Alamo*, which admittedly contained a libel regarding Dr. Rogers. The jury found that the statement inquired about was made with malice. The jury further found that Dr. Rogers had suffered no actual damage from the publication, but that exemplary damages of $2,500,000 should be assessed. The trial court, because of the "zero" actual damage finding, rendered a take-nothing judgment. The court of appeals reversed the trial court judgment and rendered judgment for Dr. Rogers against Katz and Doubleday jointly and severally for $2,500,000 in exemplary damages. 644 S.W.2d 833. We reverse the judgment of the court of appeals and affirm the trial court judgment.

In April of 1971, Katz, a journalist and licensed attorney, received a financial grant from the Fund for Investigative Journalism to go to Texas to investigate a bribery and stock scandal that allegedly involved the Sharpstown State Bank and several public officials. For several weeks during the sixty-second session of the Texas Legislature, Katz posed as a legislative aide of a state representative. During this period, Katz became closely associated with a group of representatives known as the "Dirty Thirty," which was waging a political fight against the leadership of the House of Representatives. As a result of these experiences, Katz determined to write a book about the alleged "corruption of high public officials in Texas" and the fight against it by the "Dirty Thirty." His agent persuaded an editor of Doubleday that the proposed book was publishable and salable. Doubleday's editorial committee

entered into a contract with Katz to publish the proposed book.

The book does not assert that Dr. Rogers or any of his brothers played any role whatsoever in the events surrounding the Sharpstown controversy or the legislative fight in the sixty-second session. Their names are simply "dropped" as purported business associates of strong supporters of two Texas political leaders. After reference to the Rogers brothers in this relationship, a footnote states:

> Nate Rogers was appointed to the state Optometry Board by John Connally, despite Rogers' three indictments for practicing without a license.

It is conceded by petitioners that this statement is false. Although *Nate* Rogers, the respondent herein, has served on the Optometry Board, he has never been indicted for practicing without a license. Dr. Rogers' brother, *Sol* Rogers, has been so accused, but has never been appointed to the Optometry Board.

The proposed book was first submitted to Doubleday in manuscript form in two parts as it was written by Katz. Each part was submitted to Doubleday's editor in charge of this book, and, because of the critical nature of the work, it was in turn submitted to Doubleday's counsel for legal examination. At the time the original manuscript was turned over to Doubleday's attorney, the footnote referred to *Sol* Rogers rather than to *Nate* Rogers. Doubleday's lawyer recognized the potentially libelous nature of the assertion. He wrote Doubleday's editor in charge of the proposed book, in part, as follows: "The statements that Sol Rogers had been indicted three times for practicing without a license and has been appointed to the State Optometry Board should be substantiated. On this point the substantiation which is recommended throughout this letter is of prime importance."

At a subsequent meeting with Doubleday's editor and its legal counsel, Katz was instructed to confirm the footnote's allegations or drop the note. Katz cited as his source a report contained in a House Journal. The 1949 House Journal states that *Sol* Rogers had been three times charged with practicing optometry without a license. *See* H.J. of Tex., 51st Leg., Reg. Sess. 4200–02 (1949). Some months later Katz submitted his final manuscript to Doubleday. In this draft, he had changed the first name in the footnote from "Sol" to "Nate."

It was stipulated before trial that Dr. Nate Rogers is and, at the time the book was published, was a public official of the State of Texas. In addition to his service on the Optometry Board, Dr. Rogers has conducted other public activities. Most notably, the Rogers brothers led a long fight in the Texas Legislature and in the courts against the Texas Optometric Association. This struggle essentially was over who would be legally permitted to prescribe glasses and the right to advertise. The Rogers brothers prevailed and have been very successful professionally through the Texas State Optical Company.

Since it was stipulated that Dr. Rogers was a public official, all parties recognize that the correct rule for liability is stated in *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964), as follows:

> [The first amendment] prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual malice"—that is, with knowledge that it was false or with reckless disregard of whether it was false or not.

This case presents two broad issues for decision. First, assuming that the published statement is libelous, does Texas law permit recovery of exemplary damages when the jury finds that no actual harm resulted? Second, does the record contain clear and convincing evidence to support a finding that the statement in question was actuated by constitutional malice? We address these questions in order.

## I. PUNITIVE DAMAGES

Under Texas law, punitive damages are not recoverable as a general rule in the

absence of actual damages. The rule was most recently reaffirmed by this court in *City Products Corp. v. Berman,* 610 S.W.2d 446, 450 (Tex.1980). *See also Fort Worth Elevators Co. v. Russell,* 123 Tex. 128, 70 S.W.2d 397, 409 (1934); *Girard v. Moore,* 86 Tex. 675, 26 S.W. 945, 946 (1894); *Garza v. San Antonio Light,* 531 S.W.2d 926, 930 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.); *Anderson v. Alcus,* 42 S.W.2d 294, 296 (Tex.Civ.App.—Beaumont 1931, no writ); *Flournoy v. Story,* 37 S.W.2d 272, 273 (Tex.Civ.App.—Fort Worth 1930, no writ).

Dr. Rogers acknowledges the rule, but he urges that it should not prevent his recovery in the case at bar. He asserts that the correct rule is that the plaintiff does not have to be *awarded* actual damages to receive exemplary damages; rather, he must merely show himself *entitled* to recover actual damages. Dr. Rogers relies on *Fort Worth Elevators Co. v. Russell,* 123 Tex. 128, 70 S.W.2d 397, 409 (1934). In a libel case, he contends, the plaintiff shows himself entitled to actual damages simply by proof that the defendant published a libel concerning the plaintiff. This, he says, is due to the conclusive presumption of general damages in a libel case. *See Guisti v. Galveston Tribune,* 105 Tex. 497, 150 S.W. 874, 876 (1912); *Denton Publishing Co. v. Boyd,* 448 S.W.2d 145, 147 (Tex.Civ.App.—Fort Worth 1969), *aff'd,* 460 S.W.2d 881 (Tex.1970). Therefore, he urges that proof that Doubleday published a libel about him entitled Dr. Rogers to exemplary damages as found by the jury. Apparently, the court of appeals' decision was based upon this logic.

A reading of the *Russell* case reveals that it does not help Dr. Rogers. The rule announced was clearly intended to apply to the unique situation created by the statutory bar to recovery of actual damages from an employer covered by worker's compensation. Even in that situation, the plaintiff is required to prove the existence and amount of actual damages to support a recovery of exemplary damages. Indeed, the court, in the same paragraph that contains the rule relied on by Dr. Rogers,

declared: "The rule in Texas is that exemplary damages cannot be recovered unless the plaintiff is shown to have sustained actual loss or injury. There can be no exemplary damages in the absence of a recovery of actual damages. A verdict of *nominal* damages is not sufficient." *Russell,* 123 Tex. 128, 70 S.W.2d at 409.

Far from showing actual loss or injury, Dr. Rogers was found to have suffered no injury. Dr. Rogers asserted a claim for actual damages based on his testimony as to his mental anguish and embarrassment over the libelous statement, and the trial court instructed the jury that it could presume damages without proof. There was no objection to this submission; nor has any complaint been made of the jury finding of no actual damage.

The Texas cases are unanimous in holding that recovery of actual damages is prerequisite to receipt of exemplary damages. However, Dr. Rogers advances a policy argument for creation of an exception in this case. He argues that otherwise, there will be no means of punishment available as a deterrent to libel in a situation in which the libeled plaintiff's reputation has not been—perhaps could not have been—damaged.

We do not find it desirable to carve out of the settled rule an exception for libel cases. We fully recognize and appreciate the concern over the broad protection granted the media by the *New York Times Co. v. Sullivan* test. However, in adopting this strict test for liability, the Supreme Court recognized "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co.,* 376 U.S. at 270, 84 S.Ct. at 721. The Court further reasoned that "[a] rule compelling the critic of official conduct to guarantee the truth of all his factual assertions—and to do so on pain of libel judgments virtually

unlimited in amount—leads to ... 'self-censorship.' " *Id.* at 279, 84 S.Ct. at 725.

■ Surely the danger resulting from the claimed lowered deterrent to libel is no more acute than that resulting from the same restriction on an exemplary damage recovery for other torts. Moreover, it is a rare case in which there would be a finding of punitive damages in the absence of a finding of at least some actual damages. In light of the overwhelming policy considerations that bear on the law of defamation, it would be peculiarly inappropriate to adopt a rule that singled out libel defendants for a more harsh rule of exemplary damage recovery than avails in other tort cases. Instead, we follow existing Texas law and hold that Dr. Rogers cannot recover exemplary damages because the jury found he sustained no actual damages.

## II. ACTUAL MALICE

The take-nothing judgment of the trial court is correct as to Doubleday for the additional reason that on review of the entire record we do not find clear and convincing evidence that Doubleday acted with actual malice in publishing the statement in question.[1] *See Bose Corp. v. Consumers Union of the United States, Inc.,* —— U.S. ——, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984); *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *Foster v. Upchurch,* 624 S.W.2d 564 (Tex. 1981); *Foster v. Laredo Newspapers, Inc.,* 541 S.W.2d 809 (Tex.1976); *Dun & Bradstreet, Inc. v. O'Neil,* 456 S.W.2d 896 (Tex. 1970); *El Paso Times, Inc. v. Trexler,* 447 S.W.2d 403 (Tex.1969).

The standard that is to govern our review of the actual malice finding received recent clarification. In *Bose Corporation,* the United States Supreme Court held that the first amendment requires the appellate court to independently review the evidence to determine whether actual malice is proven with convincing clarity. The Court said:

The requirement of independent appellate review reiterated in *New York Times v. Sullivan* is a rule of federal constitutional law. It emerged from the exigency of deciding concrete cases; it is law in its purest form under our common law heritage. It reflects a deeply held conviction that judges ... must exercise such review in order to preserve the precious liberties established and ordained by the ·Constitution. The question whether the evidence in the record in a defamation case is of the convincing clarity required to strip the utterance of First Amendment protection is not merely a question for the trier of fact. Judges, as expositors of the Constitution, must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of "actual malice."

—— U.S. at ——, 104 S.Ct. at 1965.

Dr. Rogers does not contend, and the court of appeals did not hold, that this record contains evidence that Doubleday published the libel with knowledge of its falsity or with intent to cause him harm. Rather, he urges that Doubleday's actions were taken in reckless disregard of the truth. Dr. Rogers argues that reckless disregard is evidenced by the claimed inherent improbability of the footnote's assertion. He relies on *St. Amant v. Thompson,* 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968), for the rule that malice may be found when the published allegation is so inherently improbable that only a reckless person would circulate it. *Id.* at 732, 88 S.Ct. at 1326. The court of appeals found reckless disregard in Doubleday's failure to independently research and verify the accuracy of the charge it published.

■ Dr. Rogers' reliance on *St. Amant* is misplaced. *St. Amant* involved publication of a false charge of corruption by a public official made solely in reliance on the affidavit of one man, whose trustworthiness was unknown. The charge was pub-

**1.** Katz does not complain in this court of the    finding of actual malice against him.

lished without investigation and heedless of the consequences. *Id.* at 730, 88 S.Ct. at 1325. Nevertheless, the United States Supreme Court held that recklessness on the part of the defamer was not shown. Failure to investigate does not establish malice. *Id.* at 733, 88 S.Ct. at 1326. The Court made it clear that "reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Id.* at 731, 88 S.Ct. at 1326.

In reaching this conclusion the United States Supreme Court recognized that the *New York Times* definition of actual malice "puts a premium on ignorance, encourages the irresponsible publisher not to inquire, and permits the issue to be determined by the defendants testimony that he published the statement in good faith and unaware of its probable falsity." *Id.* at 732, 88 S.Ct. at 1326. The Court saw this cost as justified, because "the stake of the people in public business and the conduct of public officials is so great that neither the defense of truth nor the standard of ordinary care would protect against self censorship and thus adequately implement First Amendment policies." *Id.* at 732–33, 88 S.Ct. at 1326.

These considerations underlie our prior decisions that are dispositive of the issue in the instant case. In *El Paso Times, Inc. v. Trexler*, 447 S.W.2d 403, this court held proof of an utter failure to investigate amounted to no evidence of malice. In *Dun & Bradstreet, Inc. v. O'Neil*, 456 S.W.2d 896, we held that failure of defendant to perform verification required by its own standards was no evidence of conscious doubt as to the truth of the statement circulated. Therefore, recklessness was not shown.

The libelous article considered in *Foster v. Upchurch*, 624 S.W.2d 564 (Tex.1981), contained internal contradictions as to who was guilty of the crimes charged. Yet we held that no evidence of recklessness was present. This court recognized that reck-

less statements are those made with a high degree of awareness of probable falsity. *Id.* at 566. We further acknowledged that a showing of reckless disregard meant proof that the defamer entertained serious doubts that his declaration was true. *Id.* Accordingly, we concluded that more subjective evidence was required. *See Garrison v. Louisiana*, 379 U.S. 64, 74, 85 S.Ct. 209, 215, 13 L.Ed.2d 125 (1964).

A review of the record indicates that as a publisher Doubleday does not research or write its own books. Nor does it independently verify their accuracy, but relies on the authors to perform those tasks. The author of the book in this case, Katz, was an attorney and an award winning journalist. Nevertheless, because of the controversial nature of the book, Doubleday submitted it to outside legal counsel for review. Counsel, an experienced libel attorney, identified the footnote as potentially defamatory. In a subsequent meeting with Doubleday's editor and counsel, Katz stated his source for the assertion. However, Doubleday insisted that it be substantiated or taken out. Some months later Katz submitted to Doubleday a marked-up manuscript in which the name in the footnote had been changed from "Sol" to "Nate." Doubleday published the book with the footnote as it appeared after the substantiation process.

When the facts of this case are viewed in light of the holdings of this court and of the United States Supreme Court, the conclusion is inescapable. The record before us contains no evidence that Doubleday published the defamatory statement about Dr. Rogers with reckless disregard for its truth. Doubleday presented considerable evidence that it exercised that degree of care proper for a reasonable book publisher. There is not clear and convincing evidence in this record to support a finding of actual malice on the part of Doubleday.

We conclude that the trial court properly rendered a take-nothing judgment. The judgment of the court of appeals is reversed and the trial court is affirmed.

KILGARLIN, J., concurs and dissents.

RAY, J., dissents.

KILGARLIN, Justice, concurring and dissenting.

I concur with the majority opinion that there is no clear and convincing evidence of actual malice on the part of Doubleday. This publisher may have been negligent in failing to demand verification from author Katz but nothing in the record can support a conclusion that Doubleday's actions reached the standard of conduct proscribed by *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). I, therefore, join in reversing the judgment of the court of appeals and rendering judgment that Dr. Rogers take nothing from Doubleday and Co., Inc.

However, I agree with that part of the dissent of Justice Ray that in a libel case such as this, actual damages are presumed, and, thus, exemplary damages are recoverable. That Westbrook Pegler's printed diatribe about Quentin Reynolds was so outrageous and because by disbelief Reynolds' excellent reputation remained untarnished, thereby leading to an award of only one dollar in actual damages, does not mean that $100,000 exemplary damages should not have been assessed against Pegler as punishment and a warning to others in the profession of journalism. To permit otherwise would mean that a defamer, motivated by actual malice, becomes the beneficiary of the unassailable reputation of the one he has defamed. *Reynolds v. Pegler*, 123 F.Supp. 36 (S.D. N.Y. 1954), *aff'd*, 223 F.2d 429 (2d Cir. 1955), *cert. denied*, 350 U.S. 846, 76 S.Ct. 80, 100 L.Ed. 754 (1955).

Thus, I would affirm the court of appeals' rendition of judgment for Dr. Rogers against Harvey Katz.

RAY, Justice, dissenting.

I dissent. I believe there is sufficient evidence in the record for this Court to affirm the jury finding of actual malice on the part of Doubleday.[1] Moreover, I would

follow the great weight of American authority and hold that in cases of libel per se, where actual damages are conclusively presumed as a matter of law, exemplary damages may be awarded even in the absence of a jury award of actual damages.

## ACTUAL MALICE

The *New York Times* "actual malice" standard is deceptively simple: knowing falsity or reckless disregard of the truth or falsity of the defamatory statement. *New York Times v. Sullivan*, 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964). "Reckless disregard" means that the publisher "in fact entertained serious doubts as to the truth of his publication," *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968), or had a "subjective awareness of probable falsity." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 335 n.6, 94 S.Ct. 2997, 3004 n.6, 41 L.Ed.2d 789 (1974). Although a publisher does not have an absolute duty to investigate, *St. Amant v. Thompson*, 390 U.S. at 733, 88 S.Ct. at 1326, a publisher cannot feign ignorance or profess good faith when there are clear indications present which bring into question the truth or falsity of defamatory statements. A publisher cannot

automatically insure a favorable verdict by testifying that he published with a belief that the statements were true. The finder of fact must determine whether the publication was indeed made in good faith. Professions of good faith will be unlikely to prove persuasive, ... when the publisher's allegations are *so inherently improbable that only a reckless man would have put them in circulation.* Likewise, recklessness may be found *where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports.* (Emphasis added.)

*St. Amant v. Thompson*, 390 U.S. 727, 732, 88 S.Ct. 1323, 1326, 20 L.Ed.2d 262 (1968). *See also, Herbert v. Lando*, 441 U.S. 153, 156, 99 S.Ct. 1635, 1638, 60 L.Ed.2d 115

---

1. The author, Harvey Katz, has not appealed the jury finding of actual malice against him.

(1979) (subjective awareness of probable falsity can be found from "obvious reasons" to doubt accuracy of reports).

The evidence in this case should be, in my view, sufficient evidence from which the jury could infer actual malice on the part of Doubleday. Indeed, it is scarcely conceivable, even in this age, that a responsible publisher or author could believe in good faith that a person would be placed on a regulatory board by a nationally-prominent governor to enforce a statute under which he had been indicted three times. The evidence in the record shows that Doubleday's attorney, Robert M. Callagy, was aware of the libelous nature of much of Harvey Katz' manuscript. In an internal memo to a Doubleday business manager, Callagy wrote:

> [T]his manuscript contains substantial problems in the area of libel .... The statements that Sol Rogers had been indicted three times for practicing without a license and had been appointed to the State Optometry Board should be substantiated.... On this point, the substantiation which is recommended throughout this letter is of prime importance.

The evidence shows that, despite this awareness of possible libel, Doubleday failed to make even a perfunctory investigation of the truth or falsity of the assertions in the footnote. Doubleday did not demand that Katz produce an indictment against Dr. Rogers; it did not demand that Katz produce a copy of the House Journal upon which he relied (which, in any case, *conflicted* with the assertions in the footnote); nor did it bother to contact Dr. Rogers by telephone.

No purpose whatsoever is achieved by granting a constitutional shield to such conduct. The First Amendment is not so fragile that it requires us to immunize this kind of reckless, destructive attack on a person's—even a public official's—reputation. The First Amendment is not a shelter for the character assassinator. As Justice Fortas noted in *St. Amant v. Thompson,* 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968):

> The First Amendment does not require that we license shotgun attacks on public officials in virtually unlimited open season. The occupation of public officeholder does not forfeit one's membership in the human race. The public official should be subject to severe scrutiny and to free and open criticism. But if he is needlessly, heedlessly, falsely accused of crime, he should have a remedy in law. New York Times does not preclude this minimal standard of civilized living.

*Id.* at 734, 88 S.Ct. at 1327.

While it is generally true that a publisher is not under an absolute duty to investigate, I believe that the law should not countenance an inherently improbable statement that a public official had been indicted when there was not even a perfunctory effort at verification. "Freedom of the press under the First Amendment does not include absolute license to destroy lives or careers." *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 170, 87 S.Ct. 1975, 1999, 18 L.Ed.2d 1094 (1967) (Warren, C.J., concurring).

### EXEMPLARY DAMAGES

Justice Powell stated in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) that the tort of defamation, of which libel is a subcategory, is unlike other torts:

> The common law of defamation is an oddity in tort law, for it allows recovery of purportedly compensatory damages without evidence of actual loss. Under the traditional rules pertaining to actions for libel the existence of injury is presumed from the fact of publication.

*Id.* at 349, 94 S.Ct. at 3011. The salient point here is that in libel per se cases, actual damages are *presumed by law.*[2]

---

**2.** Elements of actual damages which the law presumes from the publication of libelous per se statements include injury to reputation, humili-

ation, and mental anguish. *West Texas Utilities Co. v. Wills,* 164 S.W.2d 405, 412 (Tex.Civ.App.—

This has long been the rule in Texas and apparently throughout the United States. *See First State Bank of Corpus Christi v. Ake*, 606 S.W.2d 696 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); *Bayoud v. Sigler*, 555 S.W.2d 913 (Tex.Civ.App.—Beaumont 1977, writ dism'd w.o.j.). This presumption of actual damages in a libel per se case is *conclusive* as a matter of law. *Galveston Tribune v. Johnson*, 141 S.W. 302 (Tex.Civ.App.—Galveston 1911, writ ref'd). *Accord Mid-America Food Service v. ARA Service, Inc.*, 578 F.2d 691 (8th Cir.1978) (applying Kansas law); *Greenmoss Builders, Inc. v. Dun & Bradstreet*, 143 Vt. 66, 461 A.2d 414 (1983); *see generally*, Harper & James, *Torts* § 5.9 at 373 (1956).

My research reveals that, of the jurisdictions that have ruled on the question, the great majority have reached the conclusion that when the libel complained of is *actionable per se*, exemplary damages may be awarded even though actual damages are neither found nor shown, for in such a case the requirement of showing actual damages as a basis for awarding exemplary damages is satisfied by the *presumption of injury which arises in a libel per se case.*[3] The court in *Mid-America Food Service v. ARA Services, Inc.*, 578 F.2d 691 (8th Cir.1978), explained that the very nature of defamation per se cases compelled it to reach this conclusion because

> otherwise it would be difficult to fit the presumed damage aspect of defamation per se into the general framework of punitive damages in tort law. In most tort actions the jury determines both whether there have been actual damages, and if so, how much money is sufficient to compensate for the injury. These findings are reflected in the jury's award of actual damages. However, ... where defamation per se is implicated, the jury's function is, in effect, bifurcated and a part thereof assigned to the court. Assuming the jury finds that slanderous statements were made, the question of whether plaintiff has been damaged is resolved as a matter of law by the court if the statements are defamatory per se. The injury results from the fact that the statements were made. It is for the jury to determine only the compensatory amount. It follows that where, by awarding punitive damages, the jury has found a defendant to have made statements deemed defamatory per se, the jury's failure at the same time to award actual damages should not annul the award of punitive damages. Otherwise the conclusive presumption of damages arising from the jury's finding that the defendant made the statement is still-born.

*Id.* at 699.

I agree with the reasoning of that court on this matter. To disallow punitive damages in defamation per se cases just because actual damages are not awarded would render meaningless the long-established Texas rule that in such cases actual

Austin 1942, no writ); Dorsaneo, *Texas Litigation Guide* §§ 333.04, 333.51 (1982).

However, under the Supreme Court's ruling in *Gertz*, presumed damages and/or punitive damages may be recovered against a media defendant only if "actual malice" is proved; i.e., defendant must be shown to have had knowledge of the falsity of the libelous statement or to have had reckless disregard for its veracity. This rule applies to *all* plaintiffs. *See Carson v. Allied News Co.*, 529 F.2d 206 (7th Cir.1976).

**3.** *See, e.g., Mid-America Food Service v. ARA Services, Inc.*, 578 F.2d 691 (8th Cir.1978) (applying Kansas law); *Porterfield v. Burger King Corp.*, 540 F.2d 398 (8th Cir.1976) (applying Missouri law); *Johnson Publishing Co. v. Davis*, 271 Ala. 474, 124 So.2d 441 (1960). *Contento v.*

*Mitchell*, 28 Cal.App.3d 356, 104 Cal.Rptr. 591 (1972); *Lundquist v. Alewine*, 397 So.2d 1148 (Fla.App.1981); *Tunnell v. Edwardsville Intelligencer, Inc.*, 99 Ill.App.2d 1, 241 N.E.2d 28 (1968); *Internat'l Brotherhood of Elec. Workers Local 1805, Etc. v. Mayo*, 281 Md. 475, 379 A.2d 1223 (1977); *National Recruiters, Inc. v. Cashman*, 323 N.W.2d 736 (Minn.1982); *Kent v. City of Buffalo*, 61 Misc.2d 142, 304 N.Y.S.2d 949 (Sup.Ct. Erie County 1969), *rev'd on other grounds*, 29 N.Y.2d 818, 327 N.Y.S.2d 653, 277 N.E.2d 669 (1971); *Newspaper Publishing Corp. v. Burke*, 216 Va. 800, 224 S.E.2d 132 (1976); *See generally*, 50 Am.Jur.2d, *Libel and Slander* § 352 at 873 (1970 ed. and 1983 supp.); Annot., 17 A.L.R.2d 545.

damages are conclusively presumed as a matter of law.

There is a further reason why punitive damages should be allowed in these cases. The main reason for punitive damages in actions for libel is to deter false, malicious, and provocative attacks upon a person's reputation. Punitive damages are intended to act as a deterrent upon the libelor so that he will not repeat the offense, and to serve as a warning to others. They are a sort of hybrid between a display of ethical indignation and the imposition of a criminal fine. Punitive damages are thus allowed on the ground of public policy and not because the plaintiff has suffered any monetary damages for which he is entitled to reimbursement; the award goes to him simply because it is assessed in his particular suit.

The need for such a deterrent is at least as great where the person libeled cannot show actual financial loss because of the false statement as where some measurable damage is provable by the plaintiff. To disallow punitive damages just because plaintiff cannot show financial loss "would mean that a defamer gains a measure of immunity no matter how venomous or malicious his attack simply because of the excellent reputation of the defamed; it would mean that the defamer, motivated by actual malice, becomes the beneficiary of that unassailable reputation and so escapes punishment." *Reynolds v. Pegler,* 123 F.Supp. 36, 38 (S.D.N.Y. 1954), *aff'd,* 223 F.2d 429 (2d Cir. 1955), *cert. denied,* 350 U.S. 846, 76 S.Ct. 80, 100 L.Ed. 754 (1955). *Accord, Loftsgaarden v. Reiling,* 267 Minn. 181, 126 N.W.2d 154 (1964), *cert. denied,* 379 U.S. 845, 85 S.Ct. 31, 13 L.Ed.2d 50 (1964); *Toomey v. Farley,* 2 N.Y.2d 71, 156 N.Y. S.2d 840, 138 N.E.2d 221 (1956); *Kent v. City of Buffalo,* 61 Misc.2d 142, 304 N.Y. S.2d 949 (Sup.Ct.Erie County 1969), *rev'd on other grounds,* 29 N.Y.2d 818, 327 N.Y. S.2d 653, 277 N.E.2d 669 (1971).

Doubleday argues that punitive damages may not be allowed here because of the established Texas rule that punitive damages must bear a reasonable relationship to the amount of actual damages awarded. It argues in effect that "zero" multiplied by any number is still "zero." While it is true there is such a "reasonable relation rule" in this state, it is also true that this Court has never held that it acts to bar punitive damages in a defamation per se case such as we have before us. Given the unique nature of defamation per se cases, where actual damages are presumed by law, I believe there is simply no occasion to seek any particular relation between the actual damages and the punitive damages. However, the reasoning actually underlying the reasonable relation rule—i.e., the notion that punitive damages must not be excessive—*does* apply to defamation per se cases, as it does to all cases.[4]

I believe there is sufficient evidence in the record from which the jury could infer actual malice on the part of Doubleday and would therefore hold Doubleday accountable for its tortious conduct. Harvey Katz has not appealed the jury finding of actual malice against him, and thus that jury finding is binding as to him.

I would hold Doubleday and Katz accountable in exemplary damages to Dr. Rogers, because I am convinced that in libel per se cases exemplary damages may be awarded even in the absence of an award of actual damages. It is my belief that we should adopt the majority rule recognized by the other states which allows the recovery of exemplary damages in a libel per se case even though actual damages are neither found nor shown.

In these times of accountability, we hold others responsible for their mistakes, carelessness and malpractice. Publishers have an awesome duty to search for and find the truth. It is their highest calling. To do less is to be mediocre. None should be guilty of doing less than his best when the cause of free speech is so great to the freedom of this nation. To sacrifice truth for expediency is to abandon the responsi-

---

**4.** *See* Comment, *Required Ratio of Actual to Exemplary Damages,* 25 Baylor L.Rev. 127, 134 (1973); Dobbs, *Remedies* 211 (1973); Prosser, *Torts* 14 (4th ed. 1971).

bility which is impliedly required by the First Amendment to the United States Constitution.

I respectfully dissent.