**Clyde E. SMITH, Appellant,**

v.

**BEAUMONT ENTERPRISE & JOURNAL and Linda Gilchriest, Appellees.**

**No. 09 83 194 CV.**

Court of Appeals of Texas, Beaumont.

Aug. 23, 1984.

Rehearing Denied Sept. 19, 1984.

George E. Pletcher, J. Donald Bowen, Houston, for appellant.

Jeff Dykes, Fulbright & Jaworski, Houston, for appellees.

## OPINION

McNICHOLAS, Justice.

Plaintiff below, Clyde E. Smith, State District Judge, a "public figure", duly elected in Tyler and Hardin County for the past ten (10) years and so serving at the time of the publication of the article in question, appeals from an adverse summary judgment rendered in his libel action.

The article forming the basis for his libel claim was published in the Beaumont Enterprise and Journal on Sunday, October 4, 1981, under the by-line of Linda Gilchriest, staff writer. The newspaper and the writer were named as defendants.[1]

1. We quote it in its entirety:

*Jury Flap Ushers In New Hardin Political Season*

By LINDA GILCHRIEST
Staff writer

KOUNTZE—How appropriate that the new television season will this year coincide with the opening of the Hardin County political season. But television drama at its best cannot match the intrigue, suspense and cunning of a Hardin County political year at its best—or worst, depending on how the citizenry view political gamesmanship.

Even the most ardent fan admits this Hardin County dramatic season has gotten a jump on previous years. In past years, the first new political offerings premiered during the January-February office filing period.

But evidently, 88th District Judge Clyde Earl Smith wanted to kick off the season this month with his "Controversial Grand Jury Show."

Under the law, a judge appoints a jury commission whose responsibility it is to nominate members for consideration on the jury panel. The names of those nominated, and in this case the names of the commissioners, were placed on the list of those to be selected by Smith for the new 12-member jury.

This October grand jury panel, of which the 12 members will be selected Wednesday, does, of course, have a majority of citizens who are performing a constitutional service and will undertake their duties as responsibly as the law intended.

But Smith has on his panel a few members who may have a political ax to grind and could, in effect, destroy the open-mindedness of the grand jury system.

What cases, you may ask, would a grand jury have to hear to cause such a controversy? Answer—the case surrounding the missing funds from the Hardin County attorney's office.

One potential cast member for Smith's production is returning to the panel from a less-than-successful run on the 1978 county grand jury. That jury was responsible for an investigation into voting fraud in the 1978 Democratic primary. It returned a record 500 indictments against four Silsbee women, but only one suspect went to trial. And the case against her ended in an instructed verdict of innocent.

But this former grand juror's name came up again in 1980 during the federal mail fraud trial of County Clerk Clarence McNeely. During this proceeding, one of the women charged in the county's case testified that this particular juror was considered one who could be tampered with in the vote fraud investigation.

Whether the juror's vote was, or could have been, tampered with is not really the issue in 1981. At issue now is the fact that the name has again been put in consideration for this new grand jury.

There are more than 40,000 citizens in Hardin County. If one was really interested in having a completely unbiased jury, could not a judge find another less controversial figure to sit in that jury room?

Another controversial cast member is relatively new to the grand jury scene—but not new to county politics. This potential juror ran a bitter election campaign against a man whose daughter is involved in the attorney general's probe into the county's missing funds.

Again, why is it so important to have a controversial jury member when you have a field of 40,000 to chose from?

Other more technical objections to Smith's 20-member jury panel is that it does not accurately reflect the geographical makeup of the county. The Silsbee-Lumberton area has more than half of the county's population, but less

The plaintiff's cause of action alleged that the article accused Judge Smith of engaging in political gamesmanship by selecting a biased grand jury to influence the outcome of a probe into missing funds from the County Attorney's office, stating that Judge Smith violated the law governing grand jury appointments by selecting not only the grand jury commissioners but also the members making up the jury panel; that the story refers to "the Controversial Grand Jury Show" as being Judge Smith's production; and further, that the article branded Judge Smith with "reprehensible activities and dishonesty". Judge Smith sought actual damages and punitive damages.

The defendants answered denying all allegations, and setting forth, inter alia, the first amendment privilege, statutory privilege, truth, no malice, the unconstitutionality of the Texas Libel Statutes, and fair comment and opinion as to a public official.

On February 7, 1983, a jury was selected and the case proceeded to trial. After extensive testimony, including that of the plaintiff and the defendant staff writer, the case was submitted to the jury on February 9, 1983. The jury was unable to arrive at a verdict and a mistrial was ordered by the trial court that same date.

According to the record before us, no motion for an instructed verdict was filed at any time.

On May 31, 1983, the defendants filed their Motion for Summary Judgment, attaching a self-serving affidavit by the defendant Linda Gilchriest which stated that in her opinion the article was a valid and legitimate one, that it was based on fact and that she believed at the time of the writing of the article and the making of the affidavit that the commentary was true.

In response to the movants' motion for summary judgment, the plaintiff non-movant filed his response which set forth that Linda Gilchriest was guilty of actual malice, that any suggestion that Judge Smith played a part in the selection of the members of the grand jury panel would be false, that it would be a gross impropriety for Judge Smith to involve himself in the selection of the grand jury panel, that Judge Smith did not select the grand jury panel, and that both defamation and actual malice are fact issues which must be resolved by a jury. Plaintiff relied upon and attached the depositions on file and the transcript which included the testimony taken during the trial.

The plaintiff's contentions are that the trial court erred in granting the Defendants' Motion for Summary Judgment alleging that it was error to find that the article was not defamatory or libelous as a matter of law and that it was error to find that the defendants did not act with actual malice as a matter of law.

The main thrust of plaintiff's case is that contrary to *TEX.CODE CRIM.PROC. ANN. arts. 19.01–19.41* (Vernon 1977 and Vernon Supp.1984) which sets forth the legal requirements, including the duties of the court, for the organization of a grand jury, which are: that the District Judge shall appoint not less than three nor more than five persons to perform the duties of jury commissioners and that the jury commissioners shall select not less than fifteen nor more than twenty persons from the citizens of the county to be summoned as grand jurors. Thus, there were defamatory statements in the article when it recited that

than half of the prospective jurors reside in that area.

The jury is heavily weighted with whites, men and persons from Kountze.

The 12-member jury will be selected from the field of 20 on Wednesday. Those selected will hear cases through March—cases as minor as trespassing to as major as $67,000 in funds missing from the county attorney's office over the past four years.

Needless to say, the plot thickens. Will Smith re-examine his choices for the October-term grand jury? Will he consider the political ramifications of selecting a grand jury that could influence the outcome of the county attorney probe? Will the Hardin County political myths continue to be perpetuated?

Stay tuned for the next installment of the new political season. Rest assured, there will be more.

Under the law, a judge appoints a jury commission whose responsibility it is to nominate members for consideration on the jury panel. The names of those nominated, and in this case the names of the commissioners, were placed on the list of those to be selected by Smith for the new 12-member jury.

The plaintiff further contends that the article states that Judge Smith will "select" the twelve member jury, wherein in truth and in fact he does not have said power but merely qualifies those who have been selected by the grand jury. Judge Smith testified that the article accused him of "stacking" the grand jury, that he didn't follow the law and that "the whole article portrays to me that I'm a crooked judge, that I'm dishonest, that I play games." Corroborating witnesses also testified that this was the effect of the article.

The defendants on the other hand contend that the article was not defamatory as a matter of law, that the evidence established the absence of actual malice, that there was no cause of action because the record is totally lacking in proof of publication with "actual malice" and that the article does not accuse Judge Smith of violating the law but, at most, is political criticism of some members of the grand jury panel. The defendant further contends that to be defamatory, the language must be a false statement of fact and that an opinion cannot support a libel action.

■■■ The legal hill which a public figure plaintiff must climb in order to prevail in a defamation suit is indeed steep. The "white horse" case of *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), sets forth the standard of proof required in such cases; i.e., proof of actual malice which is a knowing falsity or reckless disregard of the truth or falsity of the statement. Our Texas Supreme Court has affirmed that standard in *Doubleday & Co., Inc. v. Rogers*, 674 S.W.2d 751 (1984)[2] with the legal caviat requiring the appellate court to independently review

the evidence to determine whether actual malice is proven with convincing clarity. *See Bose Corp. v. Consumers Union of United States, Inc.*, —— U.S. ——, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984). Additionally, proof of failure to investigate amounts to no evidence of malice *El Paso Times, Inc. v. Trexler*, 447 S.W.2d 403 (Tex.1969) and "reckless disregard" means proof that "the defamor entertained serious doubts that his declaration was true." *Doubleday & Co., Inc. v. Rogers, supra; Foster v. Upchurch*, 624 S.W.2d 564 (Tex. 1981).

■■■ The legal hill which a defendant must climb in order to prevail in a motion for summary judgment in tort and negligence actions is equally steep, because such actions "often involve disputed fact issues which may preclude summary judgment." Hittner, *Summary Judgments in Texas*, 35 Baylor L.Rev., 207, 211 (1983).

In reviewing a summary judgment record it is the duty of appellate courts to apply the following rules which are applicable to this case:

1. The movant for summary judgment ... has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Rule 166–A(c), Texas Rules of Civil Procedure; *Gibbs v. General Motors Corp.*, 450 S.W.2d 827 (Tex.1970).

2. In deciding whether or not there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant ... will be taken as true. *Cowden v. Bell*, 157 Tex. 44, 300 S.W.2d 286 (1957).

3. Every reasonable inference must be indulged in favor of the non-movants and any doubts resolved in their favor. *Hudnall v. Tyler Bank & Trust Co.*, 458 S.W.2d 183 (Tex.1970); *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929 (1952); *Womack v. Allstate Ins. Co.*, 156 Tex. 467, 296 S.W.2d 233 (1956).

**2.** Reversing this court, 644 S.W.2d 833.

*Wilcox v. St. Mary's University of San Antonio,* 531 S.W.2d 589, 592 (Tex.1975).

When a person elects to file a motion for summary judgment pursuant to Rule 166–A of the Texas Rules of Civil Procedure, he takes upon himself an extraordinary burden. In a summary judgment proceeding, the burden is on the movant to establish, as a matter of law, all the matters constituting his cause of action or his defense. All doubts as to the existence of a genuine issue of a material fact are resolved against the movant. If the motion involves the credibility of affiants or deponents, or the weight of the showings, or a mere ground of interference, the motion should not be granted. All conflicts in the evidence are disregarded, and the evidence which tends to support the position of the party opposing the motion is accepted as true. Evidence which favors the movant's position is not considered unless it is uncontradicted. If such uncontradicted testimony is from an interested witness, it cannot be considered as doing more than raising an issue of fact, unless it is clear, direct and positive, and there are no circumstances in evidence tending to discredit or impeach such testimony. *Great American Reserve Insurance Co. v. San Antonio Plumbing Supply Company,* 391 S.W.2d 41 (Tex.1965).

In such cases, the question on appeal, as well as in the trial court, is *not* whether the summary judgment proof *raises fact issues* with reference to the essential elements of the plaintiff's claim or cause of action, but whether the summary judgment proof *establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements* of the plaintiff's cause of action. The provisions of Rule 166–A are applicable to defendants and plaintiffs who move for summary judgment; the judgment should be granted, and if granted should be affirmed, *only* if the summary judgment record establishes a right thereto as a matter of law. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970).

*Poe v. San Antonio Express-News Corp.,* 590 S.W.2d 537, (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.). Nor does it matter that the reviewing court may surmise the party opposing the motion is unlikely to prevail on the merits. *Herold v. City of Austin,* 310 S.W.2d 368 (Tex.Civ. App.—Austin 1958, writ ref'd n.r.e.). It must disregard all conflicts in the evidence; i.e., proof which tends to support the position of the party opposing the motion is accepted as true, and all doubts as to the existence of a material fact are resolved against the movant. *Farley v. Prudential Insurance Company,* 480 S.W.2d 176, 178 (Tex.1972).

Appellant in opposing the motion for summary judgment filed the entire record of the trial in the court below and from the evidence we have the sworn testimony of the appellant that the "whole article portrays me as a crooked judge" and of "stacking the grand jury." There was also testimony from an attorney that the article as a whole "accused Judge Smith of being a criminal, tampering with the grand jury system ..." and testimony from a grand jury commissioner that when he read the article he knew it was not true.

■ The appellee staff correspondent testified that if her article stated Judge Smith had anything to do with selecting the names in the grand jury list, that such statement or suggestion would be false and she knew it at the time of the writing of the article. An ambiguous statement and the "ordinary reader" interpretation presents a jury question. *Denton Publishing Company v. Boyd,* 460 S.W.2d 881, 884 (Tex.1970).

■ Appellee relies on the reporter's affidavit to establish the absence of actual malice and that she believed that which she wrote to be true. But to accept the affidavit as true would be passing on the credibility of a party to the case which in a summary judgment proceeding the trial court cannot do. *Evans v. Fort Worth Star Telegram,* 548 S.W.2d 819 (Tex.Civ.App.— Fort Worth 1977, no writ); *Wise v. Dallas*

*Southwest Media Corporation,* 596 S.W.2d 533 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.). As Judge Keith wrote for this court in the *Wise* case, "We are unwilling to adopt a rule whereby a litigant may avoid a trial by placing in affidavit form his uncommunicated unilateral subjective determination of facts and his opinion as to such facts. The thoughts and opinions of an interested witness, as related in his self-serving affidavit, are not easily disproved by his opponent." *Wise,* 596 S.W.2d at 536.

 Libel cases are often decided by summary judgment, *Bon Air Hotel, Inc. v. Time, Inc.,* 426 F.2d 858, 864 (5th Cir.1970); *Wasserman v. Time, Inc.* 424 F.2d 920 (D.C.Cir.) *cert. denied,* 398 U.S. 940, 90 S.Ct. 1844, 26 L.Ed.2d 273 (1970); *Newton v. Dallas Morning News,* 376 S.W.2d 396 (Tex.Civ.App.—Dallas 1964, no writ) but not when fact issues are present. Motions for instructed verdicts and motions non obstante veredicto permit the trial court to judge credibility of the witnesses, draw inferences, and from the entire record on review determine if the actual malice test was met with "convincing clarity", *Doubleday & Co., Inc. v. Rogers, supra.* But the function of the summary judgment is not to deprive a litigant of his right to trial by jury, but to eliminate patently unmeritorious claims and untenable defenses. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.1979); *Gulbenkian v. Penn* 151 Tex. 412, 252 S.W.2d 929 (1952).

 It is not appropriate in view of our decision to discuss in detail the factual issues presented but in reviewing this record, making every inference in the non-movant's favor, disregarding conflicts in evidence, and accepting as true the proof offered by the non-movant, as we must in summary judgment, we cannot say the record is devoid of any genuine issues of fact. *Rebozo v. Washington Post Company,* 637 F.2d 375 (5th Cir.) *cert. denied* 454 U.S. 964, 102 S.Ct. 504, 102 S.Ct. 505, 70 L.Ed.2d 379 (1981); *Rose v. Enterprise Company,* 617 S.W.2d 737 (Tex.Civ.App.—Beaumont 1981, writ ref'd n.r.e.); *Wise v.*

*Dallas Southwest Media Corporation, supra;*

From our review of the entire proceedings under the recognized standards of summary judgment procedures, we are of the opinion that there were fact issues presented for a jury's determination. The judgment of the trial court is reversed and the cause remanded for a conventional trial on the merits.

REVERSED and REMANDED.